The Cardoza Law Corporation
Michael F. Cardoza, Esq. (SBN: 194065)
Mike.Cardoza@cardozalawcorp.com
Lauren B. Veggian, Esq. (SBN: 309929)
Lauren.Veggian@cardozalawcorp.com
548 Market St. #80594
San Francisco, CA 94104
Telephone:  (415) 488-8041
Facsimile:   (415) 651-9700
*Attorneys for Plaintiff*,
Ashley Case

UNITED STATES DISTRICT COURT
FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY CASE<br><br>Plaintiff,<br><br>v.<br><br>SEQUIUM ASSET SOLUTIONS, LLC;<br><br>Defendant. | **Case No.:** 2:20-cv-03800<br><br>**COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1.) **FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 ET SEQ.; AND**<br><br>2.) **ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT CAL CIV §§ 1788, ET SEQ.; AND**<br><br>3.) **CONSUMER CREDIT REPORTING AGENCIES ACT CAL CIV §§ 1785, ET SEQ.**<br><br>**DEMAND FOR JURY TRIAL** |

///

///

///

///

COMPLAINT FOR DAMAGES

## INTRODUCTION

1. Ashley Case was in the middle of paying off a long-forgotten AT&T bill to a debt collection agency when Sequium Asset Solutions swooped in, claimed the right to collect on the account instead, cancelled her agreed-upon payment plan and immediately demanded more money. Ms. Case agreed to pay the larger amount in two installments in exchange for Sequium not reporting the debt to the credit bureaus. After making her first payment, Ms. Case checked her credit reports only to find that Sequium had gone back on their agreement and had reported the debt to all three – inaccurately. When she didn't make the second of two payments, Sequium began to demand that she pay further jacked-up amounts and continued to report the debt inaccurately to her credit reports.

2. **ASHLEY CASE** ("Plaintiff"), by Plaintiff's attorney, brings this action for actual damages, statutory damages, attorney fees, and costs, against **SEQUIUM ASSET SOLUTIONS, LLC** for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter "RFDCPA"), and for violations of the Consumer Credit Reporting Agencies Act, California Civil Code § 1785 et seq. (hereinafter "CCRAA"), all of which prohibit debt collectors from engaging in abusive, deceptive and unfair practices.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to the Plaintiff, or to the Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

5. All violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

6. Unless otherwise indicated, the use of a Defendant's name in this Complaint

includes all agents, principles, managing agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of that Defendant named.

7. The Consumer Credit Reporting Agencies Act (CCRAA), the California version of the federal Fair Credit Reporting Act (FCRA), was originally enacted in 1975. In language virtually identical to that found in the original FCRA legislation, the California Legislature stated the CCRAA's purpose was "to require that consumer credit reporting agencies adopt reasonable procedures" for handling credit information so as to ensure it was handled in a manner which was "fair and equitable to the consumer with regard to confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title."[1] In 1993, the California Legislature amended the CCRAA and added a section that imposes duties on furnishers of credit information similar in some ways to those found in the FCRA. For example, Civil Code § 1785.25(a) provides that the furnisher "shall not" furnish credit information to "any credit reporting agency if the person [furnisher] knows or should know the information is incomplete or inaccurate."

## JURISDICTION AND VENUE

8. Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States, and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

9. This action arises out of Defendant's violations Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (hereinafter "FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 et seq. (hereinafter

---

[1] California Civil Code § 1785.1(d)

"RFDCPA"), and the Consumer Credit Reporting Agencies Act, California Civil Code § 1785 et seq. (hereinafter "CCRAA").

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## FDCPA AND RFDCPA

11. In enacting the FDCPA, Congress found that:
   a. There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.
   b. Existing laws and procedures for redressing these injuries are inadequate to protect consumers.
   c. Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.
   d. Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.
   e. It is the purpose of this title to eliminate abusive debt collection practice by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect Consumers against debt collection abuses. 15 U.S.C. § 1692.
12. Similarly, when enacting the RFDCPA, the California Legislature found that: The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or

deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers. Cal. Civil Code § 1788.1(a)(1).

13. The FDCPA and the RFDCPA are both strict liability statutes. That is, a plaintiff need not prove intent or knowledge on the part of the debt collector to establish liability. *See Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060-61 (9th Cir. 2011); *Donohue v. Quick Collect*, 592 F.3d 1027, 1030 ("[t]he FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional").

14. To further protect consumers, claims under the FDCPA and RFDCPA are to be judged according to the "least sophisticated debtor" or "least sophisticated consumer" standard. *Gonzales* at 1061. This standard is lower than the "reasonable debtor" standard, and is specifically designed to protect consumers of below average and sophistication or intelligence. *Id.* In addition, a plaintiff need not even have actually been misled or deceived by the debt collector's communication. Rather, liability depends on whether the *hypothetical* least sophisticated debtor – someone who is uninformed and naïve – would have likely been misled. *Id.*; *see also Tourgeman v. Collins Financial Servs.*, 755 F.3d 1109, 1119 (9th Cir. 2014).

**PARTIES**

15. Plaintiff is a natural person who resides in the County of Los Angeles, State of California. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and by Cal. Civ. Code § 1785.3(b), and a "Debtor" as that term is defined by California Civil Code § 1788.2(h).

16. Defendant Sequium Asset Solutions, LLC (hereinafter "Defendant SAS") is a Georgia corporation operating from an address of 1130 Northchase Parkway, Suite 150, Marietta, GA 30067, and is a "Debt Collector" as that term is defined

by 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c) because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, defaulted consumer debts that it did not originate. It operates a nationwide debt collection business and attempts to collect debts from consumers in virtually every state, including consumers in the State of California. Its principal, if not sole, business purpose is the collection of defaulted consumer debts originated by others, and, in fact was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

17. This case involves money due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. As such, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code § 1788.2(f).

18. This case involves Plaintiff's "consumer credit report(s)" as that term is defined by Cal. Civ. Code § 1785.3(c)

19. Defendant Sequium Asset Solutions, LLC is a "person" who "furnished information on a specific transaction or experience to any consumer credit reporting agency" under Cal. Civ. Code §§ 1785.3(j) and 1785.25.

## FACTUAL ALLEGATIONS

20. Plaintiff is an individual residing in the County of Los Angeles in the State of California.

21. Plaintiff is informed and believes, and thereon alleges, that at all times relevant, Defendant conducted and continues to conduct business in the State of California.

22. The principle purpose of Defendant's business is the collection of delinquent consumer debts, and Defendant regularly collects debts consumer debts that it did not originate.

23. In the process of getting a divorce, Plaintiff was contacted by a collector called Diversified Consultants, and made aware that the AT&T bill did not get paid and

was currently due and owing.

24. The AT&T debt was a long-forgotten bill for a phone used for personal, family or household purposes.

25. Plaintiff agreed to a payment plan, under which Plaintiff would pay $105.22 until the debt was paid off.

26. After making 5 monthly payments to debt collector Diversified Consultants toward the subject debt, Plaintiff received a call from Defendant stating that the debt was placed with Defendant in or around October 2019.

27. Plaintiff paid $105.22 per month from June through October 2019 for a total of $526.10 paid toward the debt.

28. In or around October 2019, Plaintiff received a phone call from Defendant stating that it was taking over the collection efforts from the first collector. Plaintiff asked to continue the payment plan she had set up with the first collector, but Defendant simply told her "no" and demanded a $700 payment that day. Plaintiff told them she could not make that payment, and asked to split that amount into a few payments.

29. Defendant told her "no" again, and demanded the $700 payment again. After back and forth, Defendant and Plaintiff agreed to two payments of $380 each and, in exchange for these two payments totaling to a larger sum, Defendant promised that it would not report the account to the credit bureaus.

30. Plaintiff made the first $380 payment, and checked her credit report.

31. When Plaintiff checked her credit reports, she found that Defendant had reported the account to all three of her credit reports.

32. Plaintiff did not make the second $380 payment because Defendant had violated their agreement.

33. Plaintiff called Defendant back to ask why a debt was reported when she made the payments as agreed, and Defendant said it would listen to the tapes of the earlier conversations between Plaintiff and Defendant and get back to her.

34. Defendant never got back to her.
35. On information and belief, Defendant recorded all phone conversations it had with Plaintiff regarding the subject debt.
36. On or around October 23, 2019, Plaintiff received a demand letter for the debt in the amount of $1,157.32.
37. On or around December 2, 2019, Plaintiff received a demand letter for the debt in the amount of $1,052.10.
38. Plaintiff did not make any payments towards the debt between October 23, 2019 and December 2, 2019.
39. Defendant reported the debt to Plaintiff's Equifax credit report originally in October 2019.
40. As of January 15, 2020, the "balance due" being reported to Plaintiff's Equifax credit report was $658.
41. Defendant reported the subject debt to Plaintiff's Experian credit report originally in October 2019.
42. As of January 15, 2020, the "balance due" being reported to Plaintiff's Experian credit report was $658.
43. Defendant reported the subject debt to Plaintiff's TransUnion credit report originally in October 2019.
44. As of January 15, 2020, the "balance due" being reported to Plaintiff's TransUnion credit report was $658.
45. On information and belief, Defendant has been continuously and inaccurately reporting the subject debt to Plaintiff's Equifax, Experian and TransUnion credit reports since October 2019.
46. Plaintiff has now been told by Defendant that she owes three completely different amounts, and has no idea which amount is actually correct.
47. Plaintiff has not received anything in the mail from Defendant since December 2019.

48. Plaintiff has not heard back from Defendant via phone call regarding the debt since she called and asked about why the account was being reported to her credit after she made the payment as agreed.

## ACTUAL DAMAGES

49. Plaintiff has suffered actual damages as a result of these illegal collection and intimidation tactics by this Defendant in the form of: invasion of privacy, personal embarrassment, loss of personal reputation, loss of productive time, nausea, and feelings of fear, anxiety, hopelessness, anger, persecution, emotional distress, frustration, upset, humiliation, and embarrassment, amongst other negative emotions.

50. Plaintiff's injuries are concrete. Defendants' conduct of reporting inaccurate and derogatory information is analogous to the common law tort of defamation. Furthermore, the California legislature enacted the CCRAA to protect consumers from precisely the conduct described in this Complaint. The California legislature found that the banking system is dependent upon fair and accurate credit reporting; and that, inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Consequently, the CCRAA was enacted to insure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy; and to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The alleged transgressions by Defendants would, if left unchecked in a competitive marketplace, naturally propagate had the California legislature not created laws to give vulnerable consumers a voice and a mechanism for private enforcement.

# CAUSES OF ACTION CLAIMED BY PLAINTIFF

## COUNT I

### VIOLATION OF § 1692E OF THE FDCPA

51. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. A debt collector violates § 1692e of the FDCPA when it uses any false, deceptive, or misleading representation or means in connection with the collection of any debt.

53. A debt collector violates § 1692e(2)(a) of the FDCPA when it falsely represents the character, amount, or legal status of a debt in connection with the collection of such debt.

54. Defendant violated § 1692e(2)(a) when it, among other qualifying actions and omissions, willfully misrepresented the amount of the debt, to wit: that it sent a demand on October 23, 2019 for $1,157.32, that it sent a second demand on December 2, 2019, for $1052.02, and that it reported a third amount – $658 – to Plaintiff's credit.

55. It is impossible for all three amounts to be correct all at the same time, and as such, one (or two or all) of the amounts demanded and reported are incorrect and misrepresented.

56. A debt collector violates § 1692e(8) of the FDCPA when it communicates or threatens to communicate to any person credit information which is known or which should be known to be false.

57. Defendant violated § 1692e(8) when it reported an incorrect balance due on the subject debt to Plaintiff's Equifax, Experian, and TransUnion credit reports.

## COUNT II

### VIOLATION OF § 1692F OF THE FDCPA

58. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

59. A debt collector violates § 1692f of the FDCPA when it uses unfair or unconscionable means to collect or attempt to collect any debt.

60. A debt collector violates § 1692f(1) when it attempts to collect any amount that is not authorized by agreement or permitted by law.

61. Defendant violated § 1692f when it, among other qualifying actions and omissions, willfully and without justification, demanded on October 23, 2019 that Plaintiff pay $1,157.32, that demanded on December 2, 2019, that Plaintiff pay $1052.02, and that it reported a third amount – $658 – to Plaintiff's credit.

62. It is impossible for all three amounts to be correct all at the same time, and as such, one (or two or all) of the amounts demanded and reported are incorrect and misrepresented.

## COUNT III

### VIOLATION OF § 1788.17 OF THE RFDCPA

63. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

64. A defendant violates § 1788.17 of the RFDCPA when it fails to comply with the provisions of 15 U.S.C. § 1692b to 1692j, inclusive.

65. Defendants violated § 1788.17 of the RFDCPA when they willfully engaged in conduct, the natural consequence of which the violation of 15 U.S.C. § 1692e and § 1692f.

## COUNT IV

### VIOLATION OF THE CCRAA

### CAL CIV § 1785.25(A)

66. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

67. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, Sequium Asset Solutions, LLC violated Cal Civ §1785.25(a) by furnishing incomplete and/or inaccurate information

THE CARDOZA LAW CORPORATION
548 MARKET ST. #80594
SAN FRANCISCO, CA 94104

about Plaintiff to one or more consumer credit reporting agencies when they knew or should have known that the information was incomplete or inaccurate.

68. As a result of the conduct, actions and inactions of Sequium Asset Solutions, LLC the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

69. The conduct, actions and inactions by Sequium Asset Solutions, LLC were willful, rendering Sequium Asset Solutions, LLC liable for punitive damages in an amount of up to $5,000 for <u>each</u> violation to be determined by the Court pursuant to Cal Civ §1731(a)(2)(B). In the alternative Sequium Asset Solutions, LLC was negligent entitling the Plaintiff to recover under Cal Civ §1731(a)(1).

70. The Plaintiff is entitled to recover actual damages, costs and attorney's fees from Sequium Asset Solutions, LLC in an amount to be determined by the Court pursuant to Cal Civ §1731(a)(1).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered against Defendant for:

a) Award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA), and pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), and pursuant to Cal Civ §1731 (CCRAA), against Defendant and for Plaintiff, and,

b) Award of statutory damages in the amount of $1000.00 pursuant to 15 U.S.C. § 1692k(a)(1) (FDCPA) against Defendant and for Plaintiff, and,

c) Award of statutory damages in the amount of $1000.00 pursuant to Cal. Civ. Code § 1788.30 (RFDCPA) against Defendant and for Plaintiff, and,

d) Award of punitive damages in the amount of $5,000 for each violation as the court deems proper pursuant to Cal. Civ. Code § 1785.31 (CCRAA) against Defendant and for Plaintiff, and,

e) Award of costs of litigation and reasonable attorney's fees pursuant to 15

U.S.C. § 1692k(a)(1) (FDCPA), pursuant to Cal. Civ. Code § 1788.30 (RFDCPA), and pursuant to Cal. Civ. Code § 1785.31 (CCRAA) against Defendant and for Plaintiff, and,

f) Award to Plaintiff of such other and further relief as may be just and proper.

**<u>TRIAL BY JURY IS DEMANDED.</u>**

71. Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

THE CARDOZA LAW CORPORATION

DATED: April 24, 2020            BY:   /s/ LAUREN B. VEGGIAN
                                        MICHAEL F. CARDOZA, ESQ.
                                        LAUREN B. VEGGIAN, ESQ.
                                        ATTORNEYS FOR PLAINTIFF,
                                        ASHLEY CASE